S07G1012. THE STATE v. VELAZQUEZ.

(657 SE2d 838)

HINES, Justice.

This Court granted certiorari to the Court of Appeals in *Velazquez v. State*, 283 Ga. App. 863 (643 SE2d 291) (2007), to examine the determination by the Court of Appeals that Rodolfo Lopez Velazquez was incorrectly sentenced to a term of life in prison without the possibility of parole. Finding that the Court of Appeals correctly held that such a sentence was not available in Velazquez's case, we affirm.

Velazquez pled guilty to the 2005 rape and aggravated sodomy of his seven-year-old stepdaughter. The victim's injuries were severe and required surgery. The trial court sentenced him to life in prison without the possibility of parole for rape, and a concurrent term of thirty years for aggravated sodomy. On appeal, the Court of Appeals vacated the rape sentence and remanded the case to the trial court for resentencing.

As Velazquez pled guilty, his situation is governed by OCGA § 17-10-32.1. That statute reads:

(a) Subject to the provisions of subsection (b) of this Code section, any person who has been indicted for an offense for which the death penalty or life without parole may be imposed may enter a plea of guilty at any time after indictment, and the judge of the superior court having jurisdiction may, in the judge's discretion, sentence the person to life imprisonment or to any other punishment authorized by law for the offense named in the indictment.

(b) Unless the district attorney has given notice that the state intends to seek the death penalty pursuant to the Uniform Rules of the Superior Courts, the judge shall sentence the defendant to life imprisonment. In cases where such notice has been given, the judge may sentence the

defendant to death or life without parole only if the judge finds beyond a reasonable doubt the existence of at least one statutory aggravating circumstance as provided in Code Section 17-10-30.

The State did not supply any notice under the Uniform Rules of the Superior Courts that it intended to seek the death penalty, nor did the superior court make a finding of any aggravating circumstance under OCGA § 17-10-30. Accordingly, under OCGA § 17-10-32.1, the court was not authorized to sentence Velazquez to life in prison without the possibility of parole.

In deciding Velazquez's appeal, the Court of Appeals stated that it was relying upon the precedent of this Court in *State v. Ingram*, 266 Ga. 324, 326, n. 7 (467 SE2d 523) (1996), that a sentence of life without parole is authorized "only in cases in which the State first sought the death penalty, and we are bound to follow that precedent." *Velazquez*, supra at 863. It is, however, the statutory scheme created by the General Assembly that controls this case, not simply language in this Court's opinion in *Ingram*. As has been noted, in the specific circumstances of a guilty plea in a case falling under OCGA § 17-10-32.1, a notice of intent to seek the death penalty is a statutory prerequisite to a sentence of life without the possibility of parole. *Ingram*, supra at 328-330 (Carley, J., dissenting).

The State notes that in 1999, the General Assembly enacted anew the rape statute, and added as a potential penalty imprisonment for life without the possibility of parole, such that the sentencing provision of that Code section now reads:

A person convicted of the offense of rape shall be punished by death, *by imprisonment for life without parole*, by imprisonment for life, or by a split sentence that is a term of imprisonment for not less than 25 years and not exceeding life imprisonment, followed by probation for life. Any person convicted under this Code section shall, in addition, be subject to the sentencing and punishment provisions of Code Sections 17-10-6.1 and 17-10-7.

(Emphasis supplied.) OCGA § 16-6-1 (b). See Ga. L. 1999, p. 666, § 1. Based upon this enactment, the State argues that the General Assembly intended the 1999 statute to effectively overrule the statutory analysis in this Court's decision in *Ingram*. But this argument is misplaced. "[I]t is presumed that statutes are enacted by the General Assembly with full knowledge of the existing condition of the law and with reference to it. [Cit.]" *Dudley v. State*, 273 Ga. 466, 468 (542 SE2d 99) (2001). Prior to the 1999 enactment, the death penalty was

statutorily authorized under OCGA § 16-6-1 (b). Thus, in 1999, under OCGA § 17-10-16 (a),[1] a rape prosecution was already within the ambit of Article 2 of Chapter 10 of Title 17 of the Official Code of Georgia, of which OCGA § 17-10-32.1 is a part. See OCGA § 17-10-30 et seq. And, OCGA § 17-10-32.1, with its specific reference to "life without parole," also existed at the time of the 1999 enactment. Yet, in adding the penalty of life without the possibility of parole as a punishment for the crime of rape, the General Assembly did not exempt the imposition of such punishment from the operation of OCGA § 17-10-32.1. Accordingly, OCGA § 17-10-32.1 applies even after the General Assembly's 1999 inclusion of an additional potential penalty.

The State asserts that the United States Supreme Court has declared in *Coker v. Georgia*, 433 U. S. 584, 595-598 (97 SC 2861, 53 LE2d 982) (1977), that imposition of the death penalty is not constitutional in a case of rape when the death of the victim does not result therefrom. Thus, the State argues, it was not able to request the death penalty, and therefore it could not meet the prerequisite for a sentence of life without parole under this Court's analysis, and that this Court's analysis would accordingly frustrate the legislature's intent in including life without the possibility of parole as a penalty in OCGA § 16-6-1 (b). First, we note that *Coker* specifically stated that it concerned the question of whether a death sentence violated the Eighth Amendment's prohibition of cruel and unusual punishment "with respect to rape of an *adult* woman." (Emphasis supplied.) Id. at 592 (III). And *Coker* declared that "death is indeed a disproportionate penalty for the crime of raping an *adult* woman." (Emphasis supplied.) Id. at 597 (IV). Neither the United States Supreme Court, nor this Court, has yet addressed whether the death penalty is unconstitutionally disproportionate for the crime of raping a child.[2]

Further, if the State's argument is correct and *Coker* effectively bars a sentence of life without parole under OCGA § 17-10-32.1 by preventing it from filing a notice of intent to seek the death penalty, that result would be, in fact, what the General Assembly intended. OCGA § 17-10-32.1 was created by paragraph 6 of Ga. L. 1993, p. 1654. That enactment also states: "No person shall be sentenced to

---

[1] OCGA § 17-10-16 (a) reads:
Notwithstanding any other provision of law, a person who is convicted of an offense committed after May 1, 1993, for which the death penalty may be imposed under the laws of this state may be sentenced to death, imprisonment for life without parole, or life imprisonment as provided in Article 2 of this chapter.

[2] It appears that the United States Supreme Court will address this question. See *State v. Kennedy*, 957 So.2d 757 (La. 2007), writ of certiorari granted by *Kennedy v. Louisiana*, ___ U. S. ___ (128 SC 829, 169 LE2d 625) (2008).

life without parole unless such person could have received the death penalty under the laws of this state as such laws have been interpreted by the United States Supreme Court and the Supreme Court of Georgia." Ga. L. 1993, p. 1654, § 9 (not codified). Accordingly, if the State could not file a notice of intent to seek the death penalty against Velazquez, he could not be sentenced to life without parole under OCGA § 17-10-32.1. In any event, as the State did not file a notice of intent to seek the death penalty, under OCGA § 17-10-32.1 (b), the trial court was not empowered to sentence Velazquez to life without the possibility of parole.[3]

*Judgment affirmed. All the Justices concur, except Hunstein, P. J., and Carley and Melton, JJ., who dissent.*

CARLEY, Justice, dissenting.

In 1999, the General Assembly amended OCGA § 16-6-1 (b) so as to authorize life imprisonment without parole as a sentencing option for the crime of rape. Ga. L. 1999, p. 666, § 1. Today, however, the majority holds that, by virtue of OCGA § 17-10-16 (a), that sentence is governed by OCGA § 17-10-30 et seq., including OCGA § 17-10-32.1, and, absent compliance with those statutes, is not available as punishment for the crime of rape, whether committed before or after the 1999 amendment. I submit that such a result is contrary to the principle that "the General Assembly is presumed to intend something by passage of [that amendment], [and] we must construe its provisions so as not to render it meaningless. [Cit.]" *Chatman v. Findley*, 274 Ga. 54, 55 (548 SE2d 5) (2001). If the majority were correct, the legislature accomplished nothing by amending OCGA § 16-6-1 (b) in 1999.

More perplexing is the failure even to recognize the inconsistency, pointed out by the Court of Appeals, between the amendment and a construction of OCGA § 17-10-16 (a) which limits the authority granted by that amendment. *Velazquez v. State*, 283 Ga. App. 863, 864 (643 SE2d 291) (2007). As correctly quoted in footnote 1 of the majority opinion, OCGA § 17-10-16 (a) authorizes a sentence of life imprisonment without parole as provided in OCGA § 17-10-30 et seq. for any crime for which the death penalty may be imposed, "[n]otwithstanding any other provision of law."

---

[3] The State also asserts that this Court's opinion in *Ingram*, supra, is at odds with the opinion in *Ortiz v. State*, 266 Ga. 752 (470 SE2d 874) (1996). That is not the case; what the State ignores is that the situation in each case is governed by specific statutes. Whether a sentence of life without the possibility of parole could be imposed in *Ingram* was controlled by OCGA § 17-10-30 et seq., as is this case. The sentence at issue in *Ortiz* arose under the provisions of OCGA § 17-10-7 (b) (2), which specifically deals with certain recidivist offenders.

> The natural and ordinary meaning of the word "notwith-standing" is "without obstruction from" or "in spite of." [Cit.] Application of this definition to [OCGA § 17-10-16 (a)] would mean that it was not intended as the exclusive method for [imposing a sentence of life imprisonment without parole]. The word "notwithstanding" does not indicate here any repugnancy among the [statutory] provisions. [Cit.]

*Williamson v. Schmid*, 237 Ga. 630, 632 (229 SE2d 400) (1976). Thus, the natural meaning of OCGA § 17-10-16 (a) is that "a person who is convicted of an offense . . . for which the death penalty may be imposed under the laws of this state may be sentenced to . . . imprisonment for life without parole . . . as provided in" OCGA § 17-10-30 et seq., or that, in addition, he may be given that sentence pursuant to "any other provision of law" which permits its imposition as punishment for a crime. See *Williamson v. Schmid*, supra. Since 1999, OCGA § 16-6-1 (b) has constituted such "other provision of law," because it now specifically permits punishment for the offense of rape "by imprisonment for life without parole . . . ." Therefore, the procedures in OCGA § 17-10-30 et seq. no longer constitute the exclusive method for imposing a sentence of life imprisonment without parole for rape and, in particular, compliance with OCGA § 17-10-32.1 is not required prior to the imposition of that sentence upon entry of a guilty plea to a charge of rape.

Murder cases are distinguishable. In those cases, it is absolutely necessary to utilize the procedures in OCGA § 17-10-30 et seq. because the murder statute, unlike OCGA § 16-6-1 (b), does not provide expressly for life imprisonment without parole as a possible sentence. OCGA § 16-5-1 (d). Moreover, most of the provisions regarding that sentence contained in OCGA § 17-10-30 et seq. are specifically applicable to murder, and even exclude other offenses for which the death penalty is authorized. OCGA §§ 17-10-30.1, 17-10-31.1; *State v. Ingram*, 266 Ga. 324, 326, fn. 7 (467 SE2d 523) (1996). Application of the procedures in OCGA § 17-10-30 et seq. is not required in order for a sentence of life imprisonment without parole to withstand a constitutional challenge in a non-murder case. *Ortiz v. State*, 266 Ga. 752, 753 (2) (470 SE2d 874) (1996) (upholding mandatory sentence of life imprisonment without parole authorized by OCGA § 17-10-7 (b) (2) for defendant who commits second "serious violent felony for which such person is not sentenced to death"). See also *Henry v. State*, 279 Ga. 615, 618 (6) (619 SE2d 609) (2005).

In short, there is not any reason for this Court to assume that OCGA § 16-6-1 (b) is meaningless and to extend the reach of OCGA § 17-10-16 (a) beyond its plain language, such that the procedures of OCGA § 17-10-30 et seq. apply to sentences for rape even though they

do not apply to recidivist sentences pursuant to OCGA § 17-10-7 (b). Accordingly, I dissent to the affirmance of the Court of Appeals' judgment.

I am authorized to state that Presiding Justice Hunstein and Justice Melton join in this dissent.

DECIDED FEBRUARY 25, 2008.

*Joseph K. Mulholland, District Attorney, Gun Ju Pak, Assistant District Attorney*, for appellant.
*Billy M. Grantham*, for appellee.