S13A0700. MOORE v. THE STATE.
(749 SE2d 660)

THOMPSON, Chief Justice.

In December 2000, at age 17, appellant Marcus Moore was indicted for two counts of malice murder and other crimes related to the fatal shootings of Neiteka Wesbey and Corey McMillan. In January 2001, the State gave Moore notice of its intent to seek the death penalty and of the aggravating circumstance supporting the death penalty on which it intended to rely.[1] Moore was found guilty by a jury of all charges after a bifurcated trial, and rather than proceed to the sentencing phase, he entered into a negotiated plea agreement in which he agreed, inter alia, to waive his rights to appeal and all post-conviction review of his convictions and sentences. In exchange, the State recommended and the trial court imposed a sentence of life imprisonment without the possibility of parole on the first malice murder count and consecutive sentences on the remaining counts.[2]

Four years after Moore was sentenced, the United States Supreme Court held in Roper v. Simmons, 543 U. S. 551, 568 (125 SCt 1183, 161 LE2d 1) (2005), that the Eighth Amendment to the United States Constitution prohibited the imposition of the death penalty against offenders who were under the age of 18 at the time their crimes were

---

[1] The State alleged that the murder of Wesbey was committed while Moore was engaged in the commission of another capital felony, the murder of McMillan. See OCGA § 17-10-30 (b) (2) (statutory aggravating circumstances).

[2] Moore received additional sentences of life imprisonment for the malice murder of Corey McMillan, 20 years imprisonment on each of two aggravated assault counts, and five years for each of four counts of possession of a firearm during commission of a crime.

committed. Based on this holding, in 2010 Moore filed a motion to correct void sentence, claiming that at the time he committed the crimes, Georgia's sentencing scheme authorized a sentence of life without parole only where the State could legally seek imposition of the death penalty, and because *Roper* removed the death penalty as a sentencing option in Moore's prosecution due to his age, he became ineligible to receive a sentence of life without parole. After a hearing, the trial court denied the motion, finding both that Moore waived his right to challenge his sentence and even if he had not waived the right, *Roper* did not apply so as to retroactively invalidate his sentence of life without parole.

1. As a preliminary matter, we must determine whether Moore waived his right to challenge his sentence of life without parole. The State argues waiver occurred when Moore voluntarily entered a plea agreement in which he consented to imposition of the sentence of life without parole and to waive all rights to post-conviction review. As recently held by this Court, however, a defendant who knowingly enters into a plea agreement and accepts the benefit of that bargain does not waive or "bargain away" the right to challenge an illegal and void sentence. *Nazario v. State*, 293 Ga. 480 (746 SE2d 109) (2013). See also *Hooks v. State*, 284 Ga. 531, 532 (668 SE2d 718) (2008) (regardless of valid waiver of appellate rights, defendant may challenge his sentence as void and illegal). *United States v. Boce*, 488 U. S. 563 (109 SCt 757, 102 LE2d 927) (1989), the case upon which the trial court relied in finding waiver, does not require a different result. In fact, in discussing the effect of a guilty plea on a defendant's right to challenge his conviction on double jeopardy grounds, the *Boce* Court recognized that even after entry of a knowing and voluntary plea, a defendant remains free to challenge the legality of his sentence. Id. at 569. See also *Nazario*, supra at 487 (to allow a defendant to serve a sentence that has been identified as illegal and void would not comport with fundamental fairness and due process of law).

2. Finding no waiver, we turn to the merits of Moore's challenge. The Supreme Court in *Roper* held that the Eighth Amendment prohibits imposition of a death sentence against offenders who were under the age of 18 at the time of their crimes. The State acknowledges *Roper* has since been applied retroactively to vacate death sentences imposed against juvenile offenders in this state. Here, Moore avoided a sentence of death by entering into a negotiated plea agreement pursuant to which he was sentenced to life without parole. *Roper* did not prohibit imposition of a sentence of life without parole on juvenile offenders, and therefore, we agree with the trial court that the holding of *Roper* viewed in its narrowest sense does not render a

sentence of life without parole void.[3] Viewing *Roper* in a broader perspective and in conjunction with the sentencing statutes in effect in Georgia in 2001, however, we are compelled to reverse the trial court's order denying the motion to correct Moore's sentence.

At the time Moore was sentenced in 2001, OCGA § 17-10-32.1 provided that a defendant who enters a plea after indictment for an offense for which the death penalty or life without parole may be imposed may be sentenced to life imprisonment, or if the State has filed a notice of intent to seek the death penalty, the judge may sentence the defendant to death or life without parole if the judge finds beyond a reasonable doubt the existence of at least one statutory aggravating circumstance.[4] The same legislative enactment further provided that "[n]o person shall be sentenced to life without parole unless such person could have received the death penalty under the laws of this state as such laws have been interpreted by the United States Supreme Court and the Supreme Court of Georgia." Ga. L. 1993, p. 1654, § 9 (not codified). It is clear from the language of the statute that in 2001 the State could seek a sentence of life without the possibility of parole only in those cases where the State could, consistent with state and federal laws, impose a sentence of death. See *State v. Velazquez*, 283 Ga. 206, 209 (657 SE2d 838) (2008) (if state cannot file notice of intent to seek death penalty, defendant cannot be sentenced to life without parole under OCGA § 17-10-32.1); *State v. Ingram*, 266 Ga. 324, 326 (467 SE2d 523) (1996) (state must file notice of intent to seek death penalty in order to seek alternative sentence of life without parole).

*Roper*, which eliminated the death penalty as a sentencing option available to the state in its prosecution of juvenile offenders, obviously does not on its face address whether in 2001 a juvenile offender could have been legally sentenced to life without parole under OCGA § 17-10-32.1. Its holding is, however, retroactively applicable as a new rule of substantive law prohibiting a category of

---

[3] Because Moore committed a homicide, he correctly does not argue that his sentence of life without parole violates the Eighth Amendment as imposed against an offender under the age of 18 at the time the crimes were committed. See *Graham v. Florida*, 560 U. S. 48, 50-51 (130 SCt 2011, 176 LE2d 825) (2010) (Eighth Amendment prohibits sentence of life without parole for juvenile non-homicide offenders). See also *Williams v. State*, 291 Ga. 19 (2) (727 SE2d 95) (2012) (finding no objective evidence that Georgians, as a matter of state constitutional law, consider a sentence of life without parole to be cruel and unusual punishment when imposed upon a juvenile offender who commits a homicide).

[4] In 2009, the General Assembly enacted Ga. L. 2009, p. 223, § 1 which amended OCGA § 16-5-1 (d) to add the sentence of life in prison without the possibility of parole as one of the punishments for murder. The bill also repealed OCGA §§ 17-10-31.1 and 17-10-32.1. See Ga. L. 2009, p. 223, § 5.

punishment for a class of defendants because of their status, *Teague v. Lane*, 489 U. S. 288 (109 SCt 1060, 103 LE2d 334) (1989), and we find that when applied retroactively to the state sentencing scheme in place at the time of Moore's sentencing, it rendered Moore ineligible to receive a sentence of death under OCGA § 17-10-32.1. Because, as determined by this Court, authority to seek a death sentence was a prerequisite for imposition of a sentence of life without parole under OCGA § 17-10-32.1, and because after proper retroactive application of *Roper* the State could not consistent with federal law seek the death penalty against Moore due to his age, Moore could not legally be sentenced to life without parole under OCGA § 17-10-32.1. See *Velazquez*, supra, 283 Ga. at 208-209; *Ingram*, supra, 266 Ga. at 326. See also *Schriro v. Summerlin*, 542 U. S. 348, 351-352 (II) (124 SCt 2519, 159 LE2d 442) (2004) (citations omitted) (substantive rules applied retroactively include "constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish" because they "necessarily carry a significant risk that a defendant . . . faces a punishment that the law cannot impose upon him").

Accordingly, we conclude Moore's sentence of life imprisonment without the possibility of parole is void as a sentence not allowed by law and the trial court's order denying the motion to correct void sentence must be reversed. See *Miller v. State*, 283 Ga. 412 (5) (658 SE2d 765) (2008) (vacating sentence of life without parole where sentence not authorized under Georgia law); *Funderburk v. State*, 276 Ga. 554, 556 (580 SE2d 234) (2003) (vacating sentence of life without parole entered pursuant to OCGA § 17-10-7 (c) because sentence not authorized). Moore's sentence is vacated, and the case is remanded to the trial court with direction to enter a legal sentence.

*Judgment reversed and case remanded with direction. All the Justices concur, except Blackwell, J., who concurs in the judgment only.*

DECIDED OCTOBER 7, 2013.

*Stephen M. Reba*, for appellant.
*Ashley Wright, District Attorney, Madonna M. Little, Assistant District Attorney, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellee.