## A05A0748. WILLIAMS v. THE STATE.
(616 SE2d 117)

ELLINGTON, Judge.

Following a jury trial, the Superior Court of Appling County convicted Freddie Williams of aggravated assault, OCGA § 16-5-21 (a) (1) (intent to rob). The trial court denied Williams' motion for new trial, and Williams appeals, contending he received ineffective assistance of counsel and the trial court erred in instructing the jury. Finding no error, we affirm.

Viewed in the light most favorable to the prosecution,[1] the record shows the following facts. On February 21, 2001, the victim was leaving a department store and returning to her car when she saw Williams, who was a stranger to her, near her car. The victim opened the car door, sat down, and reached to pull the door closed; Williams "fell in the door" and held a knife to the victim's side. Williams told her to give him all "his money" or he was going to "cut" her. The victim pulled cash out of her wallet and prepared to give it to Williams. Telling the victim he knew she had more money, Williams told her to unlock the back door. At that point, the store manager walked out of the store to investigate and saw the victim holding money clenched tightly in her hand while Williams stood "too close in the door." As the manager approached the car, Williams threatened to stab the victim if she attracted attention or said anything to the manager. The victim laid her money and wallet in her lap. The store manager told Williams to let the victim leave, and Williams moved away from the car far enough so the victim could drive away. At trial, the victim identified Williams as the attacker.

The investigating officer testified that Williams was arrested the day of the crime and gave a statement several days later. Williams admitted approaching the victim at her car outside the store that day but said that he knew the victim previously, that she owed him some money, and that he requested the money she owed him. According to the officer, Williams said that he was holding a nail file, which he was using to clean his nails just before his encounter with the victim, but denied pulling it on the victim. But Williams admitted telling the victim "if she didn't give him his money he was going to cut her GD throat." Against the advice of counsel, Williams testified on his own behalf. Williams stated that he asked the victim that day for $65 she had borrowed from him. Williams denied owning or carrying a knife but said he was holding a prison-issue plastic nail file with a black handle. Williams said the victim offered him $16 or $17 but that he refused it, saying he wanted all of his money. Williams admitted

---

[1] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

telling the officer that he threatened "to cut the victim's GD head off if she didn't give [him] the money" the next time he saw her. Williams denied trying to rob the victim and insisted he was innocent.

The indictment charged Williams alternatively with aggravated assault "with intent to rob, by unlawfully demanding money from [the] victim, by intimidation and/or the use of threat or coercion," and aggravated assault with a deadly weapon, specifically, a knife or sharp object. The jury found Williams guilty beyond a reasonable doubt of both counts, which the trial court merged for sentencing.

1. Williams contends the trial court erred in charging the jury on assault, aggravated assault, and robbery. The trial court charged the jury, in pertinent part, as follows:

> [A] person commits simple assault when that person either . . . attempts to commit a violent injury to the person of another, or commits an act which places another in reasonable apprehension of immediately receiving a violent injury. . . . A person commits the offense of aggravated assault when that person assaults another person with intent to rob or with a deadly weapon or any object, device or instrument, which, when used offensively against a person, is likely to or actually does result in serious bodily injury. . . . I said "the intent to rob" so I'm going to do robbery for you. A person commits robbery when, with intent to commit theft, that person takes property of another from the person or immediate presence of another by use of force or intimidation or use of threat or coercion, or by placing such person in fear of immediate serious bodily injury to the person or to another. The essential elements of the offense are as follows: the taking must have been with the purpose to commit theft against the will of the person robbed by force, intimidation, by use of threat or coercion, or placing such person or another in fear of immediate serious bodily injury to himself or herself or another.

Although his counsel waived any objection to the charges as given by failing to object when given the opportunity to do so at trial or to reserve the right to object later,[2] Williams contends the trial court committed a substantial error that was harmful as a matter of law and, therefore, this Court has jurisdiction to consider his argument, citing OCGA § 5-5-24 (c).[3] Williams contends that, by charging the

---

[2] *Edwards v. State*, 271 Ga. App. 415 (2) (b) (609 SE2d 741) (2005).

[3] "Notwithstanding any other provision of [OCGA § 5-5-24], the appellate courts shall

jury that robbery can be accomplished either by use of force or intimidation or by placing the victim in fear of immediate serious bodily injury, the trial court "broadened the indictment . . . by removing all distinctions between the counts and allowing uncharged conduct to become the basis for a conviction on either or both counts." Because Williams was charged with aggravated assault with a deadly weapon and with intent to rob, and because the jury could have found that Williams intended to rob the victim "by use of force"[4] or "by intimidation, by the use of threat or coercion, or by placing such person in fear of immediate serious bodily injury to himself or to another,"[5] the trial court's charge was sufficiently tailored to the indictment so that Williams could not have been convicted of committing a crime in a manner not charged in the indictment. *Isaac v. State*, 269 Ga. 875, 879-880 (8) (b) (505 SE2d 480) (1998). Accordingly, we find the trial court did not commit a substantial error in charging the jury as it did.

2. Williams contends the trial court erred in concluding that he received effective assistance of counsel at trial and in denying his motion for new trial on that basis. Specifically, Williams contends his counsel's performance was constitutionally deficient (a) in failing to object to certain hearsay evidence during the investigating officer's testimony, (b) in agreeing to the introduction of Williams' custodial statement, and (c) in failing to object to the trial court's instructions to the jury on assault, aggravated assault, and robbery.

> In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. [As the appellate court], we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

---

consider and review erroneous charges where there has been a substantial error in the charge which was harmful as a matter of law, regardless of whether objection was made [under the Code section] or not."

[4] OCGA § 16-8-40 (a) (1).

[5] OCGA § 16-8-40 (a) (2).

(Citations and punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 75-76 (586 SE2d 313) (2003).

(a) Williams condemns his counsel's performance in failing to object on hearsay grounds to the investigating officer's testimony regarding what other officers told him. Specifically, the State asked, "What did you determine had occurred there based on what you'd been told?", and the investigating officer responded:

> From the information I had received from . . . the initial officers at the scene, a lady had been at the store shopping and had made some purchases[,] and as she left the store[,] when she started to get into her vehicle, a subject had stepped between the door of the car and the body of the car preventing her from closing the door, and that he had demanded money while holding a knife to her side.

Although, under most circumstances, such testimony is objectionable,[6] the officer's one-sentence recap of the investigation in this case was merely cumulative of evidence already properly before the jury. The victim testified to each fact later summarized by the investigating officer, and Williams' counsel cross-examined her. Counsel's failure to object to such cumulative testimony was neither deficient nor prejudicial, and, therefore, the trial court's conclusion that Williams received effective assistance of counsel was not clearly erroneous. *Morrison v. State*, 251 Ga. App. 161, 163 (2) (554 SE2d 190) (2001).

(b) Williams criticizes his counsel's performance in agreeing to the introduction of parts of Williams' custodial statement. The record shows that Williams' counsel requested a *Jackson-Denno*[7] hearing before the State offered his custodial statement into evidence. The trial court conducted a hearing and received evidence on the issue of whether Williams gave his custodial statement freely and voluntarily without any hope of benefit or fear of injury. See OCGA § 24-3-50.[8] Before the court issued its ruling, Williams' counsel met with the

---

[6] "Unless it is the rare instance in which the conduct of an investigating officer is a matter concerning which the truth must be found, it is error to permit an investigating officer to testify, under the guise of explaining the officer's conduct, to what other persons related to the officer during the investigation." (Punctuation and footnote omitted.) *Alexander v. State*, 264 Ga. App. 34, 35 (1) (589 SE2d 857) (2003). See OCGA § 24-3-2 ("When, in a legal investigation, information, conversations, letters and replies, and similar evidence are facts to explain conduct and ascertain motives, they shall be admitted in evidence not as hearsay but as original evidence.").

[7] See *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

[8] "To make a confession admissible, it must have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury."

prosecutor and then told the court that they had an agreement "as to what's going to be entered in and what's going to be talked about." Completely disregarding any agreement between counsel regarding the admissibility of the statement, the trial court announced its finding that "any statement [Williams] made was freely and voluntarily made, was not coerced [in] any manner." Because the record shows that the trial court admitted the statement based on its finding that the statement was admissible as a matter of law, and not on the basis that Williams had withdrawn his objection to the statement, Williams cannot show any harm arising from this alleged deficient performance.

(c) Williams contends his counsel's performance was deficient in failing to object to the trial court's instructions to the jury on assault, aggravated assault, and robbery. Because the jury instruction was not error, see Division 1, supra, counsel's failure to object did not constitute ineffective assistance. *Johnson v. State*, 275 Ga. 650, 653-654 (8) (571 SE2d 782) (2002); *Mealor v. State*, 266 Ga. App. 274, 281 (f) (596 SE2d 632) (2004).

Because Williams failed to show that he received ineffective assistance of counsel, the trial court did not err in denying his motion for new trial.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED MAY 18, 2005 —
RECONSIDERATION DENIED JUNE 21, 2005 — ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Franklin D. McCrea*, for appellant.
*Stephen D. Kelley, District Attorney, Jan Kennedy, Assistant District Attorney*, for appellee.