**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**November 28, 2012**

# In the Court of Appeals of Georgia

A12A0942. EWELL v. THE STATE.

RAY, Judge.

A jury convicted Robert Leonard Ewell of seven counts of aggravated child molestation (Counts 1-7) based upon his sexual interactions with three young boys occurring between 2004 and 2009.[1] Following Ewell's amended motion for new trial, the trial court, for sentencing purposes, merged Count 2 into Count 1, and Count 5 into Count 4, but otherwise denied the motion. Ewell appeals, enumerating as error

---

[1] OCGA § 16-6-4 (c). This statute was amended by Ga. L. 2006, p. 379, § 11/HB 1059, which went into effect July 1, 2006, and again by Ga. L. 2009, Act 149, § 1, effective May 5, 2009, after many of the offenses occurred in this case. Thus, enumerations involving the aggravated child molestation counts are considered under the appropriate prior versions of the statute. See Ga. L. 1997, p. 1578, § 1. Ewell also was convicted of one count of child molestation, two counts of criminal attempt to suborn perjury and false swearing, and one count of criminal attempt to tamper with evidence, but those convictions are not before us on appeal.

the trial court's admission of similar transaction evidence; the trial court's refusal to charge the jury regarding sodomy as a lesser included offense in the aggravated child molestation counts; and raising three sentencing-related errors. For the reasons that follow, we affirm in part, vacate in part, and remand for resentencing as to Counts 1 and 3.

Viewed in the light most favorable to the jury's guilty verdict,[2] the evidence pertinent to this appeal shows that Ewell molested his wife's younger brothers, J. L. and A. L., and their friend, N. S., variously, between 2004 and 2009.

When A. L. was seven years old, Ewell began talking with him almost daily about sex, showed him pornography, taught him to masturbate and masturbated with him. Ewell and A. L. performed oral and anal sex on one another once or twice a week until A. L. was approximately 15 years old. On at least one occasion, Ewell used a hidden camera to film the act.

When J. L. was about six years old, Ewell began talking with him about sex and showing him pornography. Over the next four or five years, Ewell and J. L. performed oral and anal sex with one another approximately once a week.

---

[2] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

2

When N. S. was thirteen years old, Ewell began talking to him about sex. The two had oral sex about 20 times. Ewell also had J. L., at the age of nine or ten, perform anal sex on him while N. S. watched, and had anal sex with N. S. while J. L. watched.

Many of the acts involving the three boys occurred in a barn or a camper behind the home belonging to the family of A. L., J. L., and Ewell's then-wife, where Ewell met with the boys under the guise of teaching them about computers, auto mechanics, and how to fix appliances.

1. Ewell contends that the trial court erred in admitting evidence of similar transactions, arguing that the prejudicial effect substantially outweighed the probative value. Specifically, Ewell argues that the similar conduct had "extremely limited relevance," and involved the testimony of twelve of Ewell's former child victims, not including the victims in the instant case, such that it "dwarfed" the evidence regarding the charged offenses.

We review a trial court's determination regarding the admission of similar transaction evidence under an abuse of discretion standard.[3]

---

[3] *Ledford v. State*, 313 Ga. App. 389, 390 (721 SE2d 585) (2011).

The exception to the general rule that evidence of other crimes is not admissible has been most liberally extended in the area of sexual offenses: In crimes involving sexual offenses, evidence of similar previous transactions is admissible to show the lustful disposition of the defendant and to corroborate the victim's testimony. There need only be evidence that the defendant was the perpetrator of both crimes and sufficient similarity between the independent crime and the offenses charged.[4]

Here, the State gave notice of its intent to admit similar transaction evidence. Ewell moved in limine and at trial sought to exclude the evidence, but the trial court found that it was admissible for the limited purpose of showing bent of mind and lustful disposition. The trial court also gave the jury a limiting instruction.

At trial, the State admitted similar transaction evidence including, without objection, Ewell's 2001 guilty plea to four counts of enticing a child for indecent purposes and to one count of electronically furnishing obscene materials to a minor. All five child victims of those acts testified at trial. The victims testified that Ewell invited them to his trailer to have sex together, and then filmed two of them having sex. Three of those victims testified that Ewell showed them pornography. A police

---

[4] (Citation omitted.) Id.

investigator and the fifth victim testified that while Ewell was a Boy Scout leader, Ewell sent the victim pornographic stories via e-mail.

Other victims, including A. L. and J. L.'s younger sister and Ewell's ex-wife, with whom he began a sexual relationship when she was 15 years old and he was 31 years old, testified about their underage sexual experiences with Ewell. These experiences, variously, included being shown pornography, being encouraged to masturbate with Ewell or use a life-size blow-up doll, participating in oral or anal sex with Ewell, and being encouraged to have sex with other children, including their siblings, while Ewell watched. The testimony of these witnesses showed a basic pattern of Ewell's, similar to his pattern with the victims in the instant case, of introducing children to sex by getting them to talk about it, showing them pornography, encouraging them to masturbate, introducing them to oral and anal sex and, in some instances, encouraging them to have sex with one another while he watched.

The State admitted this similar transaction evidence after two of the child victims in the instant case testified, and prior to the testimony of the final child victim in the instant case. In *Norris v. State*, a case involving charges related to the physical and mental abuse of an adult woman, the trial court allowed testimony from 11

5

similar transaction witnesses, and we found no error in its determination that relevance outweighed prejudicial effect where the testimony showed, as here, a basic pattern of conduct tending to show criminal intent.[5] "The fact that the evidence might incidentally place appellant's character in evidence does not destroy its admissibility as a similar transaction."[6]

It is well-settled that when a defendant is being tried for some form of child sexual abuse, evidence of his sexual abuse of other children, regardless of the gender of the victims or the nomenclature or type of acts perpetrated upon them, is sufficiently similar to be admissible.[7] Further, we have found

---

[5] See *Norris v. State*, 230 Ga. App. 492, 493 (1) (496 SE2d 781) (1998). But see *Gilstrap v. State*, 261 Ga. 798, 799 (2) (410 SE2d 423) (1991) (evidence from nine similar transaction witnesses who testified *before* the State offered any evidence related to the case at bar raised the possibility that the jury could have found defendant guilty based on the number of similar transactions).

[6] (Citation and punctuation omitted.) *Norris*, supra.

[7] *Waters v. State*, 303 Ga. App. 187, 188 and 190 (2) (692 SE2d 802) (2010) (evidence of prior conviction for molesting three boys sufficiently similar to be admissible as similar transaction in case involving alleged touching of defendant's granddaughter); *Cannon v. State*, 296 Ga. App. 687, 688 (2) (675 SE2d 560) (2009) (evidence of similar transaction admissible when used to show pattern of "grooming" a young boy by giving him presents and money, showing him pornography, photographing him in the nude, and later molesting him); *Myrick v. State*, 242 Ga. App. 892, 893-894 (1) (531 SE2d 766) (2000) (evidence of similar transactions against different victims admissible regardless of sex of victim or type of act is

when considering the admissibility of similar transaction evidence, the proper focus is on the similarities, not the differences, between the separate crime and the crime in question. This rule is most liberally extended in cases involving sexual offenses because such evidence tends to establish that a defendant has such bent of mind as to initiate or continue a sexual encounter without a person's consent.[8]

Given these guiding principles and the considerations discussed above, and based upon the record in this case, the trial court did not abuse its discretion in allowing evidence of past similar transactions because of the similarities to the instant crimes and the probative value showing Ewell's unique bent of mind.[9]

2. Ewell claims that the trial court erred in failing to charge the jury on sodomy as a lesser included offense of aggravated child molestation as to Counts 1-7, despite counsel's written request. We find no error.

---

admissible).

[8] (Citation and punctuation omitted.) *Pareja v. State*, 286 Ga. 117, 121 (686 SE2d 232) (2009).

[9] Id.

Where the State's evidence shows evidence of all of the elements of an offense, which in the instant case is aggravated child molestation, and there is no evidence of the lesser offense, there is no error in failing to charge on the lesser offense.[10]

The offense of aggravated child molestation required a showing that Ewell, with the intent to arouse or satisfy either his own sexual desires or those of a child under the age of 16, committed child molestation that physically injured the child or involved acts of sodomy.[11] The offense of sodomy, by contrast, lacks any intent requirement, providing only that the offense is committed when a person "performs or submits to any sexual act involving the sex organs of one person and the mouth or anus of another."[12]

---

[10] *Linto v. State*, 292 Ga. App. 482, 486 (4) (664 SE2d 856) (2008). Accord *Roman v. State*, 185 Ga. App. 32, 34-35 (3) (363 SE2d 329) (1987) (no error when court denied request to charge on aggravated child molestation as lesser included offense of aggravated anal sodomy where defendant repudiated confessions and denied molestation).

[11] OCGA § 16-6-4.

[12] OCGA § 16-6-2 (a). Earlier versions of this statute were in effect when the criminal acts at issue occurred. See Ga. L. 2000, p. 1346, § 1 and Ga. L. 2006, p. 379, § 9/HB 1059. These earlier versions, like the current version, also omit any intent requirement for sodomy.

As charged in the indictment, Counts 1-7 all contain the necessary elements of sodomy. Nevertheless, there was no evidence presented at trial that warranted a charge on sodomy, because Ewell's theory of the case, as evinced by his not guilty plea and his testimony at trial, was that while he admitted spending time alone with each of the three victims referenced in Counts 1-7, he had not touched any of them. The State's evidence, by contrast, showed Ewell sodomized the three victims *with the intent* to gratify his own sexual desires, as discussed in Division 1, supporting a finding that Ewell was guilty of aggravated child molestation. Thus, because Ewell denied touching A. L., J. L., and N. S., the evidence presented at trial did not afford the jury the alternative of finding him guilty of sodomy in lieu of aggravated child molestation, and the evidence in the case showed either the commission of the indicted crimes of aggravated child molestation, with its attendant requirement of intent, or no crimes at all.[13] We discern no error.

_____

[13] See *Walker v. State*, 279 Ga. App. 749, 751-752 (3) (a) (632 SE2d 482) (2006) (finding that although evidence of intentional touching of the child's intimate parts *without* the intent necessary to prove child molestation would require an instruction on the lesser included offense of sexual battery, the charge was not necessary when the prosecution presented evidence of intent to arouse and satisfy defendant's sexual desires as required for child molestation, and the defense contended that the victim fabricated the event thus presenting no evidence of sexual battery).

3. Ewell argues, and the State concedes, that the trial court erred when it imposed life sentences as to Counts 1 and 3 of aggravated child molestation, because those sentences were ex post facto in application. As Ewell was sentenced under a later version of the statute than the one in effect when the crimes were committed, we agree.

"A crime must be construed and punished according to the provisions of the law existing at the time of its commission."[14]

(a) *Aggravated Child Molestation, Count 1*. Ewell was charged in the indictment with aggravated child molestation pursuant to OCGA § 16-6-4 (c) against A. L. occurring between January 7, 2004, and January 7, 2006.

As such, the version of the statute in place when the charged conduct occurred provided that "[a] person convicted of the offense of aggravated child molestation shall be punished by imprisonment for *not less than ten nor more than 30 years.*"[15]

---

[14] (Citation omitted.) *Riley v. State*, 243 Ga. App. 697, 698 (534 SE2d 437) (2000). Accord *Searcy v. State*, 162 Ga. App. 695, 697 (2) (291 SE2d 557) (1982) (where the indictment and evidence show the date upon which the crime was committed, a defendant must be sentenced under the law in effect on that date).

[15] (Emphasis supplied.) OCGA § 16-6-4 (d) (1) (2005) (Ga. L. 1997, p. 1578, § 1).

However, Ewell received a life sentence for Count 1[16] pursuant to an amended version of the statute which provided in pertinent part that "a person convicted of the offense of aggravated child molestation shall be punished by imprisonment for life."[17] As this amended version of the statute was not effective until July 1, 2006, six months after the last charged date on which the conduct took place, Ewell's sentence as to Count 1 is in error.

(*b*) *Aggravated Child Molestation, Count 3*. Ewell was charged with aggravated child molestation against A. L. occurring between January 7, 2005, and January 7, 2007. Although the date range in the indictment within which the crimes were committed spans both versions of OCGA § 16-6-4 (d), as discussed in Division 3 (a), Ewell was sentenced to life in prison pursuant to the version OCGA § 16-6-4 (d) that became effective July 1, 2006.

At trial, neither the evidence presented nor A. L.'s testimony identified a specific date or dates within the range listed in the indictment on which the crimes occurred. Also, the jury's general verdict form does not identify whether Ewell was

---

[16] Following Ewell's motion for a new trial, Counts 1 and 2 (aggravated child molestation) were merged.

[17] OCGA § 16-6-4 (d) (1) (2007) (Ga. L. 2006, p. 379, § 11/HB 1059).

11

found guilty of acts that he committed before or after the amendment took effect. Thus, given the prohibition against the ex post facto application of law, and the possibility that the offense occurred prior to the 2006 amendment, the life sentence for Count 3 was in error. "To fall within the ex post facto prohibition, a law must be retrospective–that is, it must apply to events occurring before its enactment–and it must disadvantage the offender affected by it by . . . increasing the punishment for the crime."[18] Further, because the crimes could have occurred either before or after the amendment's effective date, the possibility that the jury convicted based on acts that occurred prior to the enactment of the life sentence provision in the statute is plain error.[19]

Therefore, we vacate Ewell's sentences as to Counts 1 and 3, and remand this matter to the trial court for resentencing.

---

[18] (Citations and punctuation omitted; emphasis omitted.) *Forde v. State*, 289 Ga. App. 805, 810-812 (2) (658 SE2d 410) (2008) (where victim testified that crimes occurred both before and after the date of a statutory amendment, and in the absence of a special jury verdict form identifying the dates on which the crimes occurred, ex post facto clause required this Court to vacate sentence and remand matter for resentencing).

[19] Id. at 811 (2).

4. Ewell contends that the trial court erred in sentencing him to life in prison for Counts 4 through 7 of aggravated child molestation.[20] He argues that because the trial court instructed the jury that the dates of the indictment were not material, and that Ewell could be convicted of committing the charged offenses at any time during the applicable statute of limitation, which runs for seven years from the date the victims, in this case, J. L. (Counts 4 and 5), and N. S. (Counts 6 and 7) turned sixteen, the earlier version of OCGA § 16-6-4 applies. We disagree.

"In determining whether a statute is being applied in an ex post facto manner, the definitive time period to be considered is the date on which the criminal offense was committed."[21] It is clear that the testimony and evidence presented at trial supports a conclusion that the charged conduct as to these counts occurred *only* after the effective date of the July 1, 2006, amendment to OCGA § 16-6-4.

(*a) Counts 4 and 5.* The indictment charged that the merged Counts 4 and 5 of aggravated child molestation occurred, respectively, between February 17, 2007, and

---

[20] The trial court merged Counts 4 and 5 in its amended sentencing order.

[21] (Citation and punctuation omitted.) *Frazier v. State*, 284 Ga. 638, 639 (1) (668 SE2d 646) (2008); see also *Forde*, supra at 811 (2) (ex post facto violations occur only where there is a possibility that the jury convicted defendant based on acts that occurred prior to the enactment of the statutory change).

February 19, 2008, and between July 4, 2009, and August 6, 2009. The evidence adduced at trial showed that J. L., who was born February 19, 1999, was nine or ten years old when he performed anal sex on Ewell at Ewell's behest. This means the crimes would have occurred sometime during 2008 and/or 2009.

*(b) Counts 6 and 7.* The indictment charged that Count 6 of aggravated child molestation occurred between July 4, 2009, and August 6, 2009. The evidence adduced at trial shows that N. S., who was born on July 4, 1994, performed anal sex on Ewell at Ewell's behest when N. S. was fourteen or fifteen years old, meaning that the crimes occurred sometime during 2008 and/or 2009.

The indictment charged that Count 7 of aggravated child molestation occurred between August 6, 2007, and December 31, 2009. The evidence adduced at trial shows that Ewell performed oral sex on N. S. more than twenty times, beginning when N. S. was thirteen years old and that Ewell continued to engage in sexual activity with N. S. for approximately two years, meaning that the crimes occurred in 2007 or later.

As to all counts discussed above, the trial court charged the jury to render a verdict against the defendant only if the State's evidence was "sufficient to convince you beyond a reasonable doubt that the defendant is guilty of the crime charged." The

trial court also charged the jury as to its duty to "determine the facts of the case from all of the evidence presented." The jury is presumed to follow the trial court's instructions, and to employ common sense in its deliberations.[22] Because a reasonable jury could only have concluded that the evidence supported a verdict that Ewell was guilty based upon the evidence presented, and because that evidence *only* supported a conclusion that the crimes occurred after the July 1, 2006, amendment to OCGA § 16-6-4 became effective,[23] we find no error.

*Judgment affirmed in part, vacated in part and case remanded with direction.*

*Miller, P. J., and Branch, J., concur.*

---

[22] See generally *Gentry v. State*, 212 Ga. App. 79, 83 (4) (441 SE2d 249) (1994); *Hendry v. State*, 177 Ga. App. 439, 441 (339 SE2d 650) (1986) (Beasley, J., concurring specially).

[23] We note that OCGA § 16-6-4 was again amended, effective May 5, 2009, and thus the amendment would apply to Counts 5-7. However, as this amendment in pertinent part merely reinstates the sentence for life imprisonment at OCGA § 16-6-4 (d) (1) that was in effect under the version of OCGA § 16-6-4 (d) (1) (2007) (Ga. L. 2006, p. 379, § 11/HB 1059), supra, under which Ewell was sentenced, no ex post facto issues arise. See *Frazier*, supra at 6 (1) (a penal statute is retrospective only if it alters the consequences for crimes committed prior to its enactment).

15